**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ARROW, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1) Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| SIERRA ONCOLOGY INC., ROBERT PELZER, GAURAV AGGARWAL, ANDREW ALLEN, MONA ASHIYA, CRAIG COLLARD, JEFFREY H. COOPER, STEPHEN G. DILLY, GEORGIA ERBEZ, CHRISTY OLIGER, and ANDREW SINCLAIR, | (2) Violation of § 20(a) of the Securities Exchange Act of 1934 |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, David Arrow ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Sierra Oncology, Inc. ("Sierra" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to GlaxoSmithKline plc ("Parent") through merger vehicle

- 1 -
COMPLAINT

Orikum Acquisition Inc. ("Merger Sub") (collectively with "Parent", "GSK") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction valued at approximately $918 million (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a April 12, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, GSK will acquire all of the remaining outstanding shares of Sierra' common stock at a price of $55.00 per share in cash. As a result, Sierra will become an indirect wholly-owned subsidiary of GSK.

3. Thereafter, on May 2, 2022, Sierra filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Sierra, provided by Sierra management to the Board and the Board's financial advisor Lazard Frères & Co. LLC ("Lazard Frères"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport

to support the fairness opinion created by Lazard Frères, and provided to the Company and the Board.

6. In violation of the Exchange Act Defendants caused to be filed the materially deficient Preliminary Proxy Statement on April 29, 2022 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.

7. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

8. Plaintiff is a citizen of California and, at all times relevant hereto, has been a Sierra stockholder.

9. Defendant Sierra Oncology, Inc., a late-stage biopharmaceutical company, engages in researching, developing, and commercializing therapies for the treatment of patients with hematology and oncology needs. Sierra is incorporated under the laws of the State of Delaware and has its principal place of business at 1820 Gateway Drive, Suite 110, San Mateo, CA 94404. Shares of Sierra common stock are traded on the NasdaqGS Exchange under the symbol "SRRA".

10. Defendant Robert Pelzer ("Pelzer") has been a Director of the Company at all relevant times.

11. Defendant Gaurav Aggarwal ("Aggarwal") has been a director of the Company at all relevant times.

12. Defendant Andrew Allen ("Allen") has been a director of the Company at all relevant times.

13. Defendant Mona Ashiya ("Ashiya") has been a director of the Company at all relevant times.

14. Defendant Craig Collard ("Collard") has been a director of the Company at all relevant times.

15. Defendant Jeffrey H. Cooper ("Cooper") has been a director of the Company at all relevant times.

16. Defendant Stephen G. Dilly ("Dilly") has been a director of the Company at all relevant times. In addition, Dilly serves as the Company's Chief Executive Officer ("CEO"), Chairman of the Company Board, and President.

17. Defendant Georgia Erbez ("Erbez") has been a director of the Company at all relevant times.

18. Defendant Christy Oliger ("Oliger") has been a director of the Company at all relevant times.

19. Defendant Andrew Sinclair ("Sinclair") has been a director of the Company at all relevant times.

20. Defendants identified in ¶¶ 10 - 19 are collectively referred to as the "Individual Defendants."

21. Non-Party GSK is a major designer and manufacturer of Pharmaceutical products. GSK is headquartered in the United Kingdom and its shares are traded on the Nasdaq Stock Exchange under the symbol "GSK."

22. Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Sierra maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

26. Sierra is a late-stage biopharmaceutical company, engages in researching, developing, and commercializing therapies for the treatment of patients with hematology and oncology needs. Its lead drug candidate, momelotinib, is a selective and orally bioavailable Janus kinase 1 (JAK 1), JAK2, and Activin A receptor type 1 (ACVR1) inhibitor. The company also develops SRA515, a selective bromodomain-containing protein 4 inhibitor; and SRA737, an orally bioavailable small molecule inhibitor of Checkpoint kinase 1. It has the license agreements with Carna Biosciences, Inc. to develop and commercialize SRA141, a small molecule kinase inhibitor targeting Cdc7; AstraZeneca AB; and CRT Pioneer Fund LP. The company was formerly known as ProNAi Therapeutics, Inc. and changed its name to Sierra Oncology, Inc. in January 2017. Sierra Oncology, Inc. was incorporated in 2003 and is headquartered in San Mateo, California.

27. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the March 10, 2022 press release announcing its 2021 Year end financial results, the Company highlighted such milestones as raising a total of $155.3 million in gross proceeds from a public equity offering as well as entering into an exclusive global in-licensing agreement for SRA515 inhibitor.
COMPLAINT

28. Speaking on these positive results, CEO Defendant Dilly commented on the Company's positive financial results as follows, "Last year was a great year for Sierra. We accelerated timelines in the midst of a global pandemic to over enroll the pivotal MOMENTUM clinical trial, achieving statistical significance in the primary and all pre-specified secondary endpoints. This year, we'll be focused on our regulatory submission and the continued build out of our commercial team to prepare for the anticipated approval of momelotinib in early 2023."

29. These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Sierra. Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

30. Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Sierra to enter into the Proposed Transaction without providing requisite information to Sierra stockholders such as Plaintiff.

***The Flawed Sales Process***

31. As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

32. Notably, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and GSK, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

34. On November 4 2021, Sierra and GSK issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **LONDON--(BUSINESS WIRE)--** GlaxoSmithKline plc (LSE/NYSE: GSK) and Sierra Oncology, Inc (Nasdaq: SRRA) today announced that the companies have entered into an agreement under which GSK will acquire Sierra Oncology, a California-based, late-stage biopharmaceutical company focused on targeted therapies for the treatment of rare forms of cancer, for $55 per share of common stock in cash representing an approximate total equity value of $1.9 billion (£1.5 billion).
>
> Myelofibrosis is a fatal cancer of the bone marrow impacting the normal production of blood cells. Anaemia represents a high unmet medical need in patients with myelofibrosis. At diagnosis, approximately 40% of patients are already anaemic, and it is estimated that nearly all patients will eventually develop anaemia.1,2 Patients treated with the most commonly used JAK inhibitor will often require transfusions, and more than 30% will discontinue treatment due to anaemia.3 Anaemia and transfusion dependence are strongly correlated with poor prognosis and decreased overall survival.4
>
> Momelotinib has a differentiated mode of action with inhibitory activity along key signalling pathways. This activity may lead to beneficial treatment effects on anaemia and reduce the need for transfusions while also treating symptoms. In January 2022, Sierra Oncology announced positive topline results from the MOMENTUM phase III trial. The study met all its primary and key secondary endpoints, demonstrating that momelotinib achieved a statistically significant and clinically meaningful benefit on symptoms, splenic response, and anaemia.
>
> Luke Miels, Chief Commercial Officer, GSK said: "Sierra Oncology complements our commercial and medical expertise in haematology. Momelotinib offers a differentiated treatment option that could address the significant unmet medical needs of myelofibrosis patients with anaemia, the major reason patients discontinue treatment. With this proposed acquisition, we have the opportunity to potentially bring meaningful new benefits to patients and further strengthen our portfolio of specialty medicines."
>
> Stephen Dilly, MBBS, PhD, President and Chief Executive Officer, Sierra Oncology said: "Uniting with GSK creates the best opportunity for Sierra Oncology to realise its mission of delivering targeted therapies that treat rare forms of cancer while also delivering compelling and certain value for our stockholders. Now we have a partner with a global infrastructure and oncology expertise that enables us to deliver momelotinib to patients as quickly as possible and on a global scale."

COMPLAINT

Momelotinib complements GSK's Blenrep (belantamab mafodotin), building on GSK's commercial and medical expertise in haematology. The proposed acquisition aligns with GSK's strategy of building a strong portfolio of new specialty medicines and vaccines. If the transaction is completed and momelotinib is approved by regulatory authorities, GSK expects momelotinib will contribute to GSK's growing specialty medicines business, with sales expected to begin in 2023, with significant growth potential and a positive benefit to the Group's adjusted operating margin in the medium term.

***Potential Conflicts of Interest***

35. The breakdown of the benefits of the deal indicate that Sierra insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Sierra.

36. Company insiders, currently own large, illiquid portions of Company stock, as well as large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. Such significant consideration is not shared amongst Plaintiff and other public stockholders of the Company, and will be paid out to Company insiders as follows:

| | Shares Held Directly [1] | | In-the-Money Sierra Options [2] | |
|---|---|---|---|---|
| Name | Number of Shares (#) | Value of Shares ($) | Number of Shares Subject to Option (#) [3] | Value of Shares Subject to Option ($) |
| Stephen G. Dilly | 5,000 | 275,000 | 1,037,000 | 39,837,140 |
| Sukhi Jagpal | 0 | 0 | 229,000 | 8,596,579 |
| Barbara Klencke | 15,000 | 825,000 | 296,091 | 11,386,774 |
| Kevin Norrett | 0 | 0 | 195,700 | 7,663,509 |
| Christina Thomson | 0 | 0 | 190,900 | 7,358,673 |
| William Turner | 0 | 0 | 177,747 | 6,889,620 |
| Andrew Allen | 1,650 | 90,750 | 18,780 | 736,261 |
| Georgia Erbez | 0 | 0 | 18,000 | 670,365 |
| Craig Collard | 13,500 | 742,500 | 16,000 | 632,540 |
| Andrew Sinclair | 1,314,127 [4] | 72,276,985 | 14,374 | 565,006 |
| Jeffrey H. Cooper | 0 | 0 | 25,436 | 989,777 |
| Christy Oliger | 0 | 0 | 18,000 | 670,365 |
| Mona Ashiya | 1,964,770 [5] | 108,062,350 | 14,374 | 565,006 |
| Gaurav Aggarwal | 2,735,852 [6] | 150,471,860 | 14,374 | 565,006 |
| Robert Pelzer | 0 | 0 | 24,061 | 933,375 |

37. Moreover, certain employment agreements with certain Sierra executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follow:

| Name | Cash ($) (1) | Equity ($) (2) | Total ($) |
| --- | --- | --- | --- |
| Stephen Dilly | 1,591,271 | 39,837,140 | 41,428,411 |
| Barbara Klencke | 1,213,455 | 11,386,774 | 12,600,229 |
| Mark Kowalski (3) | 0 | 1,574,738 | 1,574,738 |

38. The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

39. Thus, while the Proposed Transaction is not in the best interests of Sierra, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

40. On May 2, 2022, the Sierra Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

41. Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

   a. Whether the confidentiality agreements entered into by the Company with GSK differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

   b. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including GSK, would fall away; and

   c. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Sierra's Financial Projections*

42. The Preliminary Proxy Statement fails to provide material information concerning financial projections for Sierra provided by Sierra management to the Board and its financial advisors and relied upon by its financial advisors in their analyses. The Preliminary Proxy

Statement discloses management-prepared financial projections for the Company which are materially misleading.

43. Notably the Preliminary Proxy Statement reveals that as part of its analyses, Lazard Frères reviewed, "various financial forecasts and other data provided to it by Sierra Oncology."

44. Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Sierra management provided to the Board and its financial advisors. Courts have uniformly stated that "projections ... are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

45. With regard to the *Certain Unaudited Prospective Financial Information* prepared by Sierra Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

    a. Total revenue, including the underlying necessary inputs of: partnership payments, upfront payment, development, regulatory and commercial milestones, and royalties for the Company's partnered assets;

    b. COGS, including the underlying necessary inputs of: product cost of goods sold and estimated royalties and milestones payable by Sierra Oncology;

    c. Gross profit, including the underlying necessary inputs of: estimated royalty and milestone expenses payable to the Company; and

    d. Unlevered Free cash flow, including all inputs and assumptions used for income taxes, the projected impact of net operating losses, depreciation and amortization, changes in net working capital, and capital expenditures.

46. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

- 11 -
COMPLAINT

47. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

48. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the financial advisors' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Lazard Frères*

49. In the Preliminary Proxy Statement, Lazard Frères describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

50. With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a. The specific inputs and assumptions used to determine the utilized discount rate range of 10.0% to 12.0%;

    b. The Company's weighted average cost of capital;

    c. The specific range of terminal values for the Company calculated;

    d. The specific inputs and assumptions used to determine negative terminal growth rate range of (50%) – (30%).

51. With respect to the *Selected Public Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a. The specific valuation multiples and market trading data used to examine

each company compared.

52. With respect to the *Selected Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a. The specific metrics for each precedent transaction analyzed.

53. With respect to the *Premia Paid Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a. The specific premia's analyzed, as well as the inputs used to calculate each, including in each case, the target company's:

        i. closing share price on the last trading day upon which shares of Sierra Oncology traded on an unaffected basis;

        ii. 30-day volume weighted average price based on trading days ("VWAP"); and

        iii. 52-week high share price based on intraday prices.

54. With respect to the *Research Analyst Price Targets*, the Preliminary Proxy Statement fails to disclose the following:

    a. The specific equity research price targets utilized; and

    b. The identity of the equity research firms that generated each utilized price target.

55. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

56. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Sierra stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

# FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

57. Plaintiff repeats all previous allegations as if set forth in full herein.

58. Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

59. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

60. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

61. The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63. The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

64. The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

65. Plaintiff repeats all previous allegations as if set forth in full herein.

66. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

67. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

68. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Sierra' business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

69. The Individual Defendants acted as controlling persons of Sierra within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Sierra to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Sierra and all of its employees. As alleged above, Sierra is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Directing the Individual Defendants to comply with the Exchange Act and disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 9, 2022

**BRODSKY & SMITH**

By: _____
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*

- 17 -
COMPLAINT